# EXHIBIT B

Orange County Clerk - Court Records Search

## 2023-CA-001967-O : ALICEA, DELMARIE vs. USHEALTH ADVISORS SUBSIDIARY OF USHEALTH GROUP, INC. A UNITED HEALTHCARE COMPANY (UNITED HEALTHCARE INC

| | | | |
|---|---|---|---|
| Case Type: | CA - Other | Date Filed: | 3/8/2023 |
| Location: | Div 36 | UCN: | 482023CA001967A001OX |
| Judge: | A James Craner | Status: | Pending |
| Citation Number: | CA - Other | Appear By Date: | |

### Parties

| Name | Type | Attorney | Atty Phone |
|---|---|---|---|
| DELMARIE ALICEA | Plaintiff | WILLIAM HOWARD | 813-500-1500 |
| USHEALTH ADVISORS SUBSIDIARY OF USHEALTH GROUP, INC. A UNITED HEALTHCARE COMPANY (UNITED HEALTHCARE INC | Defendant | | |

### Charge Details

| Offense Date | Charge | Plea | Arrest | Disposition | Sentence |
|---|---|---|---|---|---|

### Docket Events

| Date | Description | Pages |
|---|---|---|
| 5/4/2023 | Order Enlargement and Extension of Time | 1 |
| 5/2/2023 | Order Enlargement and Extension of Time<br><br>Comments: to Respond to Complaint | 1 |
| 5/1/2023 | Correspondence | 1 |
| 4/24/2023 | Motion for Enlargement/Extension of Time<br><br>Comments: TO RESPOND TO COMPLAINT | 3 |
| 4/6/2023 | Affidavit of Service | 1 |
| 3/31/2023 | Summons Issued Electronically as to | 3 |
| 3/20/2023 | Service Document Unable to be Issued<br><br>Comments: Name on summons does not match complaint. | |
| 3/17/2023 | Exhibit(s) | 1 |
| 3/17/2023 | Exhibit(s)<br><br>Comments: A | 11 |
| 3/17/2023 | Notice of Filing<br><br>Comments: EXHIBIT A AND B | 2 |
| 3/16/2023 | General Standing Case Management Plan/Order | 3 |
| 3/9/2023 | Service Document Unable to be Issued<br><br>Comments: Per Admin Order No. 2021-04, a Standing Case Management Plan/Order for Streamlined or General civil cases must be submitted before summonses can be issued. Please resubmit the proposed summons along with the Case management Order. Please correct and resubmit the entire filing within 5 business days | |
| 3/8/2023 | Request to Produce | 9 |
| 3/8/2023 | Request for Admissions | 7 |
| 3/8/2023 | Notice of Service of Interrogatories | 2 |

| Date | Description | Pages |
| --- | --- | --- |
| 3/8/2023 | Complaint | 16 |
| 3/8/2023 | Civil Cover Sheet | 3 |
| 3/8/2023 | Case Initiated | |

## Hearings

| Date | Hearing | Time | Location | Pages |
| --- | --- | --- | --- | --- |

## Financial

| Date | Description | Payer | Amount |
| --- | --- | --- | --- |
| 3/8/2023 | Transaction Assessment | | 410.00 |
| 3/8/2023 | Payment | William Peerce Howard | -410.00 |
| | | Balance Due: | 0.00 |

## Bonds

| Description | Status Date | Bond Status | Amount |
| --- | --- | --- | --- |

## Warrants

| Number | Status Description | Issue Date | Service Date | Recall Date | Expiration Date | Warrant Type |
| --- | --- | --- | --- | --- | --- | --- |

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

## I. CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

Delmarie Alicea
Plaintiff

Case # ___________________
Judge ___________________

vs.
USHealth Advisors subsidiary of USHealth Group
Defendant

---

## II. AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

**III. TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
  ☐ Business governance
  ☐ Business torts
  ☐ Environmental/Toxic tort
  ☐ Third party indemnification
  ☐ Construction defect
  ☐ Mass tort
  ☐ Negligent security
  ☐ Nursing home negligence
  ☐ Premises liability—commercial
  ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐ Commercial foreclosure
  ☐ Homestead residential foreclosure
  ☐ Non-homestead residential foreclosure
  ☐ Other real property actions

☐Professional malpractice
  ☐ Malpractice—business
  ☐ Malpractice—medical
  ☐ Malpractice—other professional
☒ Other
  ☐ Antitrust/Trade regulation
  ☐ Business transactions
  ☐ Constitutional challenge—statute or ordinance
  ☐ Constitutional challenge—proposed amendment
  ☐ Corporate trusts
  ☐ Discrimination—employment or other
  ☐ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities litigation
  ☐ Trade secrets
  ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

**IV. REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V. NUMBER OF CAUSES OF ACTION:** [ ]
(Specify)

1

**VI. IS THIS CASE A CLASS ACTION LAWSUIT?**
☒ yes
☐ no

**VII. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒ no
☐ yes If "yes," list all related cases by name, case number, and court.

**VIII. IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ yes
☐ no

**IX. DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
☐ yes
☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ William Peerce Howard    Fla. Bar # 103330
Attorney or party    (Bar # if attorney)

William Peerce Howard    03/09/2023
(type or print name)    Date

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
CIVIL DIVISION**

DELMARIE ALICEA,

Plaintiff,

v.

USHEALTH ADVISORS a wholly-owned national sales and distribution subsidiary of USHEALTH GROUP, INC., a UNITED HEALTHCARE COMPANY (United Healthcare, Inc.)

Defendant.
_______________________________/

CASE NO.:

**JURY TRIAL DEMANDED**

**CLASS ACTION**

**CLASS ACTION COMPLAINT**

Plaintiff Delmarie Alicea, brings this class action against Defendant US Health Advisors, a wholly-owned national sales and distribution subsidiary of USHealth Group, Inc., a fully integrated insurance holding company that is a United Healthcare Company, ("United Healthcare, Inc."), for sending unsolicited telemarketing "robocalls" without her prior express written consent in clear violation of Florida law.

**NATURE OF THE ACTION**

1. This is a case under The Florida Telemarketing Act ("Telemarketing Act") that requires any "telephone solicitor" to have the "*prior express written consent*"

of the recipient before sending *any* text messages (hereinafter, "robocalls")[1] with an automated system. *See* Part IV of Ch. 501, Fla. Stat.

2. Liability under Florida's Telemarketing Act attached when Defendant sent robocalls to Plaintiff without first obtaining her prior express written consent. Thus, because Defendant did not obtain from Plaintiff her express written consent before sending the robocalls to Plaintiff, liability under the statute attached, irrespective of any action taken or not taken on the part of Plaintiff.

3. The illegal and annoying robocalls sent by Defendant are precisely the intrusion of privacy that Florida's legislators sought to prevent by passing the Telemarketing Act.

4. Unwanted "robocalls" are still the #1 consumer complaint in America today. In July of 2021, Americans were bombarded with 4.2 billion robocalls. That is an average of 136.3 million robocalls per day.[2]

5. Robocalls are very inexpensive to make and provide an extremely cheap way to disrupt the lives of Floridians.

6. The Telemarketing Act was enacted to prevent companies like Defendant from invading Florida citizens' privacy in service of advertising sales.

---

[1] The Telemarketing Act applies to text messages, telephone calls, and voicemail transmissions. Fla. Stat. § 501.059(1)(i). For purposes of this pleading, the term "robocall" means "text messages."
[2] https://robocallindex.com/

7. The Florida legislature unanimously amended the Telemarketing Act to combat unwanted and automatically dialed calls that had resulted in **293,071 complaints from Florida consumers in 2020**.[3] [*See* Exhibit A]

8. Plaintiff seeks to eliminate the scourge of Defendant's robocalls that plagues Floridians.

9. Robocalls are uniquely suited to annoy and disrupt instantly and on a grand scale.

10. Defendant claims to offer health benefit programs for all ages and lifestyles. Defendant telemarketing targets millions of people from their earliest years through their working lives and through retirement.

11. Defendant's robocalls have caused Plaintiff and the Class members harm, including violations of their statutory rights, statutory damages, annoyance, nuisance, and massive invasions of their privacy.

12. Through this action, Plaintiff seeks an injunction and statutory damages on behalf of herself and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## PARTIES

13. Plaintiff never did business with Defendant.

14. Plaintiff never provided Defendant with prior express written consent to send her the robocalls.

[3] The Florida Senate's BILL ANALYSIS AND FISCAL IMPACT STATEMENT (March 25, 2021).

15. Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) because she was the regular user of telephone number 407-***-2350 (the "2350 Number") that received Defendant's robocalls.

16. Plaintiff is, and at all times relevant hereto was, an individual and a "consumer" as defined by Fla. Stat. § 50.059(1)(b) because she was a "prospective purchaser, lessee, or recipient of consumer goods or services."

17. Defendant is, and at all times relevant hereto was, a publicly traded healthcare company and a "telephone solicitor" as defined by Fla. Stat. § 501.059(i). Defendant ("United Healthcare, Inc.") maintains its primary place of business and headquarters in Minnetonka, Minnesota. Defendant directs, markets, and provides business activities throughout the State of Florida.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.220 and Fla. Stat. § 26.012(2). The matter in controversy exceeds the sum or value of $30,000 exclusive of interest, costs, and attorney's fees.

19. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state. Defendant sent or caused to be sent text messages into Florida without the requisite prior express written consent in violation of the Telemarketing Act. Plaintiff received such texts while residing and physically present in Florida.

20. Venue for this action is proper in this Court pursuant to Fla. Stat. § 47.051 because Defendant (1) does business in this state; and (2) has an agent or other representative in Orange County.

## FACTUAL ALLEGATIONS

21. The Telemarketing Act went into effect July 1, 2021.

22. On July 29, 2022 Defendant or one of Defendant's agents, sent an unsolicited robocall/text to Plaintiff.

23. Defendant sent Plaintiff that robocall/text without first obtaining her prior express written consent, as required by the Telemarking Act. Fla. Stat. § 501.059(1)(g).

24. Defendant bombarded Plaintiff with robocalls/texts, including on July 29, August 2, and August 5. Defendant did so, on each occasion, without first obtaining her prior express written consent, as required by the Telemarketing Act. Fla. Stat. § 501.059(1)(g)

25. Plaintiff does not possess all of the robocalls/texts that Defendant sent to her during the relevant time period; Defendant has thus far not provided a record of the robocalls/texts. The exact number of texts Defendant sent to Plaintiff without her prior express written consent can be ascertained through discovery.

26. All the texts that Defendant sent to Plaintiff marketed and solicited the sale of Defendant's product and are considered "telephonic sales calls" per Fla. Stat. § 501.059(1)(j).

27. On July 29, 2022, Plaintiff received a text message on her cellular telephone from Defendant the contained the following message: [*See* Exhibit B]:

> Hey, Delmarie! This is Kayla with United Healthcare. Are you still searching for affordable healthcare? As an agent in your area, I can send updated rates via text/email. No obligations!
> Or reply "STOP" if you are no longer looking

28. On August 2, 2022, Plaintiff received a text message on her cellular telephone from Defendant the contained the following message: [*See* Exhibit B]:

> Hi, Delmarie! There are new nationwide health plans that can start immediately if you qualify. Can I send you a quick quote? No obligations!

29. On August 5, 2022 at approximately 10:00 a.m., Plaintiff received a text message on her cellular telephone from Defendant the contained the following message: [*See* Exhibit B]:

> Hi, Delmarie! Do you still need to get your healthcare taken care of? I have access to everything in the area. Can I send you a quick quote?

30. On August 5, 2022 at approximately 5:09 p.m., Plaintiff received a text message on her cellular telephone from Defendant the contained the following message: [*See* Exhibit B]:

> Hey, Delmarie! Are you still inquiring about affordable healthcare? I have access to everything available in the area. Single or family plan?

31. As demonstrated by the above texts, the purpose of Defendant's robocall campaign was to solicit the sale of "consumer goods or services" per Fla. Stat. § 501.059(1)(c).

32. Defendant made telephone sales calls in the form of text messages, to Plaintiff and other Class members, using an "automated system" for the dialing of telephone numbers in violation of Fla. Stat. § 501.059(8)(a).

33. As demonstrated above, Defendant's sales text messages were sent with an automated system as evidenced by the same text beginning with "Hi Delmarie" or "Hey Delmarie"."[4]

34. Upon information and belief, Defendant caused similar sales robocalls to be sent to other individuals residing or located in Florida without their consent.

35. Plaintiff is a consumer and the regular user of the telephone number that received the above robocalls.

36. Upon information and belief, Defendant knew or should have known that its robocalls were illegal and unwanted.

37. To transmit the above robocalls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

---

[4] Plaintiff obviously does not have access to Defendant's system but simple discovery will confirm what type of system Defendant uses. The prima facie evidence suggest this is an "off the shelf" robodialer.

38. Plaintiff never provided Defendant with *any* consent, much less "*prior express written consent*" as required by Florida's Telemarketing Act, to authorize Defendant to transmit robocalls to Plaintiff utilizing an automated system for the selection or dialing of telephone numbers.

39. From at least July 2022 to present date, Defendant has been sending robocalls/texts to Plaintiff's cellular telephone without her prior express written consent. And while all the robocalls are possibly illegal under various state and federal statutes, Plaintiff brings this case to protect *Floridians* under the *Telemarking Act*.

40. Defendant's robocalls caused Plaintiff and the Class members the type of damage and harm Florida Legislators attempted to prevent by passing the Telemarketing Act including statutory damages, inconvenience, invasion of privacy, aggravation, and annoyance.

## CLASS ALLEGATIONS

PROPOSED CLASS

20. Plaintiff brings this lawsuit on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3). The "Class" that Plaintiff seeks to represent is defined as:

> All persons in Florida who: (1) were sent a text message regarding Defendant's goods or services, (2) without his or her prior express written consent, (3) using an automated

system for the selection or dialing of telephone numbers, (4) on or after July 1, 2021.

21. Defendant and its employees and agents are excluded from the Class. Plaintiff does not know the exact number of members in the Class but believes the Class members number in the several thousands, if not more.

NUMEROSITY

22. Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers listed throughout Florida without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

23. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

24. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are: (1) whether Defendant sent, or allowed to be sent, robocalls to Plaintiff and the Class members; (2) whether Defendant can meet its burden of showing that it had prior express written consent to send such messages; and (3) whether Defendant is liable for damages, and the amount of such damages.

25. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits robocalls without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

26. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories. Liability under the Telemarketing Act attached when Defendant sent robocalls to Plaintiff and the Class members without first obtaining their prior express written consent required by Florida law. Thus, because Defendant did not obtain from Plaintiff her express written consent before sending the robocalls to Plaintiff, liability under the statute attached, irrespective of any action taken or not taken on the part of Plaintiff or the Class members.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

27. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**SUPERIORITY**

28. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable.

While the aggregate damages sustained by the Class are potentially in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

29. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**(Violation of the Telemarketing Act)**

30. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

31. It is a violation of the Telemarketing Act to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

32. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

33. "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliveror cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

    a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

    b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property,

goods, or services.

Fla. Stat. § 501.059(1)(g).

34. Defendant failed to secure prior express written consent from Plaintiff and the Class members.

35. In violation of the Telemarketing Act, Defendant made or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

36. Defendant made or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

37. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a)(2) of the Telemarketing Act, Plaintiff and the Class members were harmed and each is entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

38. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the Telemarketing Act, Plaintiff and the Class members were harmed, and each is entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls pursuant to § 501.059(10)(a)(1) of the Telemarketing Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Class;

c) An award not to exceed three times the statutory amount and a finding Defendant willfully or knowingly violated the statute;

d) An award of attorney's fees, costs, and expenses as permitted by the Telemarketing Act;

e) An order declaring that Defendant's actions, as set out above, violate the Telemarketing Act;

f) An injunction requiring Defendant to cease all telephonic sales calls/texts made without prior express written consent, and to otherwise protect the interests of the Class;

g) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

Respectfully submitted,

*/s/ William "Billy" Peerce Howard*
William "Billy" Peerce Howard, Esq.
Florida Bar No. 0103330
Amanda J. Allen, Esq.
Florida Bar No. 0098228
THE CONSUMER PROTECTION FIRM, PLLC
401 East Jackson Street, Suite 2340
TRUIST PLACE
Tampa, FL 33602
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com

Michael Dell'Angelo, Esquire
PA Bar No.: 80910
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4606
mdellangelo@bm.net

John W. Barrett (WV Bar No. 7289)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: 304-345-6555
Facsimile: 304-342-1110
JBarrett@baileyglasser.com

*Counsel for Plaintiff and the putative class*

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT**
**IN AND FOR ORANGE COUNTY, FLORIDA**
**CIVIL DIVISION**

DELMARIE ALICEA

Plaintiff,
v.

CASE NO.:

USHEALTH ADVISORS a wholly-owned national sales and distribution subsidiary of USHEALTH GROUP, INC., a UNITED HEALTHCARE COMPANY, (United Healthcare, Inc.)
_____________________________________/

**PLAINTIFF'S NOTICE OF SERVING FIRST SET**
**<u>OF INTERROGATORIES TO DEFENDANT</u>**

Plaintiff, DELMARIE ALICEA, by and through the undersigned counsel, pursuant to Rules 1.340 Florida Rules of Civil Procedures, hereby gives notice of serving the USHealth Advisors a wholly-owned national sales and distribution subsidiary of US Health Group, Inc., a United Healthcare Company, (United Healthcare, Inc.), "(United Healthcare") Interrogatories numbered one (1) through twelve (12), to be answered under oath.

I HEREBY CERTIFY that on March 8, 2023, a copy of Plaintiff's First Set of Interrogatories to Defendant, United Healthcare, Inc, were served upon below counsel for Defendant via process server to the Registered Agent for Defendant.

Respectfully submitted,

*<u>/s/ William "Billy" Peerce Howard</u>*
**William "Billy" Peerce Howard, Esq**.
Florida Bar No.: 0103330
**Amanda J. Allen, Esquire**
Florida Bar No.: 98228
THE CONSUMER PROTECTION FIRM, PLLC
401 East Jackson Street, Suite 2340

Tampa, Florida 33602
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com
Brenda@TheConsumerProtectionFirm.com
*Attorneys for Plaintiff*

Filing # 168298496 E-Filed 03/08/2023 01:17:50 PM

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT**
**IN AND FOR ORANGE COUNTY, FLORIDA**
**CIVIL DIVISION**

DELMARIE ALICEA,

Plaintiff,

v. CASE NO.:

USHEALTH ADVISORS a wholly-owned national sales and Distribution subsidiary of USHEALTH GROUP, INC., a UNITED HEALTHCARE COMPANY (United Healthcare, Inc.)

Defendant.

---

**PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS DIRECTED TO DEFENDANT**

---

COMES NOW, the Plaintiff, DELMARIE ALICEA, by and through her undersigned attorney, and pursuant to Rule 1.370 of the Florida Rules of Civil Procedure, files this Request for Admissions and requests Defendant, USHealth Advisors a wholly-owned national sales and distribution subsidiary of USHealth Group, Inc., a United Healthcare Company (United Healthcare, Inc) ("United Healthcare"), to admit, in this action, that each of the following statements are true:

<u>**DEFINITIONS**</u>

The following definitions apply to each of the Requests set forth herein and are deemed to be incorporated in each of said requests:

1. "Defendant," "you," and "your" shall mean "United Healthcare" any of its directors officers, sales, agents, collection agents, debt collectors, managers, supervisors, general agents, agents (including attorneys, accountants, consultants, investment advisors or bankers), employees, representatives and any other persons purporting to act on their behalf. These defined terms include divisions, affiliates, subsidiaries, predecessor entities, acquired entities and/or related entities or any other entity acting or purporting to act on its behalf, including those who made calls, or who it caused to make calls, to Plaintiff's "cellular telephone number" from any telephone number.

2. "Any," "All," and "each" shall be construed as any, all and each.

3. "And" shall mean and/or.

4. "Concern," "concerning," "refer," "referring," "relate, " "relating," "regard" or "regarding" shall all mean documents which explicitly or implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a result of the subject matter of the request, including all documents which reflect, record, specify, memorialize, relate, describe, discuss, consider, concern, constitute, embody, evaluate, analyze, refer to, review, report on, comment on, impinge upon, or impact the subject matter of the request.

5. "Communication" includes every manner or means of disclosure, transfer, or exchange of information, and every disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

6. "Call," "called," "telephone call," "telephone calls made", "calls made," and/or "made telephone calls", "make telephone calls," shall mean each and every telephone call, dialed call, made call, dialed call attempt, call attempt, call placed, effort to communicate by telephone (**including text messages**), and/or an attempt or try to communicate by telephone (**including text messages**), regardless of whether such call was answered or a message was left.[1]

7. "Document" or "documents" shall be interpreted in the broadest possible sense and includes, without limitation, all written, recorded, printed, typed, transcribed, filmed, digitized or graphic matter and all other tangible things and media upon which any handwriting, typing,

---

[1] A text message qualifies as a call under the Florida Telephone Solicitation Act ("Telemarketing Act"). *See* Fla. Stat. § 501.059(1)(j) ("'Telephonic sales call' means a telephone call, text message, or voicemail transmission . . . .").

printing, drawing, representation, electrostatic or other copy, sound or video records, magnetic or electrical impulse, electronically stored information ("ESI"), visual reproduction or communication is recorded, reproduced or represented, including each and any book, record, correspondence, report, call log, account note, autodialer report, computer printout, memoranda, electronic mail (i.e., email), contract, table, tabulation, graph, chart, diagram, plan, schedule, appointment book, calendar, diary, time sheet, report, study, analysis, draft, telegram, teletype or telecopy message, file, telephone log, telephone message, check, microfilm, microfiche, picture, photograph, printout, electronic data compilation, tape, diskette, drive, removable media, note, minutes or transcript of proceedings, including, but not limited to, minutes of meetings, or other communication of any type, including inter-office communications, questionnaires, surveys, charges, newspapers, booklets, circulars, work papers, bulletin, notices, instructions, resolutions, reports, records, papers, bills or invoices, books of account, financial statements, working papers, deeds, loan agreements, notes, ledgers, security agreements, financing statements, tax returns, checks, receipts, journals and data of every description, and shall include each and every original produced or reproduced by any method, all non-identical copies (whether different from the original because of notes made in or attached to such copy, or otherwise), all data compilations from which information can be obtained (translated, if necessary, into reasonably usable form) and any preliminary versions, drafts or revisions of any of the foregoing.

8. "Including" means (1) including, but not limited to, or (2) including, without limitation. Any examples, which follow these phrases, are set forth to clarify the request, definition, or instruction, not limited to the request, definition, or instruction.

9. "Identify" with respect to natural person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

10. "Or" shall mean and/or.

11. "Person" or "Persons" shall mean natural persons, proprietorships, joint ventures, partnerships, corporations, trust, groups, associations, organizations, governmental agencies and all other entities.

12. "Plaintiff" or "Plaintiffs" shall mean Delmarie Alicea. Plaintiff is a representative of all persons or entities in Florida who: (1) were sent a text message regarding Defendant's goods and/or services, (2) without his or her prior, express written consent, (3) using an automated system for the selection or dialing of telephone numbers, (4) on or after July 1, 2021.

13. "Plaintiff's cellular phone number" or "Plaintiff's cellular telephone" at all times material hereto was, and shall mean, (407) xxx-2350.

14. As used herein, the Florida Telemarketing Act means the Florida Telephone Solicitation Act also known as FTSA ("Florida Telemarketing Act"), Fla. Stat. § 501.059, as amended by Senate Bill No. 1120.

15. The amendment to the Florida Telemarketing Act became effective on July 1, 2021[2]

16. "Relevant time period" or "relevant period" or "during the relevant period" shall mean on or after July 1, 2021.

17. If no time period is specified in the request, assume the time period requested and/or referred to is the time period of 4 years prior to the filing of the complaint.

18. If a term is not defined, the term shall be given its ordinary and plain meaning.

## REQUESTS FOR ADMISSIONS

1. You are "doing business in this state" as defined by the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(e).

2. You are a "merchant" as defined by the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(f).

3. You made more than one "telephonic sales call" to the Plaintiff as defined by the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(j) since July 2022

4. You sent numerous text messages to (407) xxx-2350.

5. You made a call to (407) xxx-2350 using an automated system for the selection or dialing of telephone numbers.

6. When You called Plaintiff, it was for the purpose of soliciting sale of "consumer goods or services" as defined by the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(c).

7. When You called Plaintiff, Plaintiff was the "called party" pursuant to the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(a).

8. When You called Plaintiff, Plaintiff was a "consumer" pursuant to the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(b).

2 https://www.flsenate.gov/Laws/Statutes/2018/Chapter501/Part_IV

9. When You called Plaintiff, You were a "telephone solicitor" as defined by the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(i).

10. Plaintiff did not provide "prior express consent" to you as defined by the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(g).

11. You do not have a written agreement with Plaintiff that "bears the signature of the called party" as defined by the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(g)(1).

12. You do not have a written agreement with Plaintiff that "clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone, text message, or voice mail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection of dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail." as defined by the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(g)(2).

13. You do not have a written agreement with Plaintiff that "includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered" as defined by the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(g)(3).

14. You do not have a written agreement with Plaintiff that "includes a clear and conspicuous disclosure informing the called party that by executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection and dialing of telephone numbers" as defined by the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(g)(4)(a).

15. You do not have a written agreement with Plaintiff that states Plaintiff "is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services" as defined by the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(g)(4)(b).

16. You do not have a "signature" of the plaintiff as defined by the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(h).

17. You made an "unsolicited telephonic sales call" to the Plaintiff.

18. You made or knowingly allowed a telephonic sales call to be made involving "an automated system for the selection or dialing of telephone numbers" as stated in the Florida Telemarketing Act, Fla. Stat. § 501.059(1)(j).

19. You made over 10,000 calls to a phone with a Florida area code since July 1, 2021.

20. You made over 100,000 calls to a phone with a Florida area code since July 1, 2021.

21. You made over 1,000,000 calls to a phone with a Florida area code since July 1, 2021.

22. You did not have written policies addressing Your compliance with the Florida Telemarketing Act on July 2, 2021.

23. You did not have written policies addressing Your compliance with the Florida Telemarketing Act on January 1, 2022.

24. You did not have written policies addressing Your compliance with the Florida Telemarketing Act on July 2, 2022.

25. You did not scrub (407) xxx-2350 prior to sending text messages after July 1, 2021.

26. You had no procedures in place on July 1, 2021, to determine if cell numbers you were calling were reassigned.

27. You did not attempt to determine if (407) xxx-2350 was a reassigned number prior to texting to it after July 1, 2021.

28. You did not attempt to determine if (407) xxx-2350 was a number that sat dormant prior to texting to it after July 1, 2021.

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March, 2023, a copy of Plaintiff's Request for Admissions were served upon below counsel for Defendant United Healthcare, Inc., via process server to the Registered Agent for Defendant.

Respectfully submitted,

*/s/ William "Billy" Peerce Howard*
William "Billy" Peerce Howard, Esq.
Florida Bar No.: 0103330
Amanda J. Allen, Esquire
Florida Bar No.: 98228
THE CONSUMER PROTECTION FIRM, PLLC
401 East Jackson Street, Suite 2340
Tampa, Florida 33602
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com
Brenda@TheConsumerProtectionFirm.com
Attorneys for Plaintiff

**ANSWERS OR OBJECTIONS, if any, must be served upon the undersigned counsel, on or before forty-five (45) days after service of the Request for Admissions. Otherwise, these statements shall be deemed admitted.**

**IN THE CIRCUIT COURT OFTHE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY
CIVIL DIVISION**

DELMARIE ALICEA,

Plaintiff,

v.

CASE NO.:

USHEALTH ADVISORS a wholly-owned national sales and distribution subsidiary of USHEALTH GROUP, INC., a UNITED HEALTHCARE COMPANY (United Healthcare, Inc.)

Defendant.

---

**PLAINTIFF'S REQUESTS FOR THE PRODUCTION
OF DOCUMENTS TO DEFENDANT**

---

Plaintiff, Delmarie Alicea, by and through undersigned counsel and pursuant to the provisions the Florida Rules of Civil Procedure 1.350 respectfully requests the Defendant, USHealth advisors a wholly-owned national sales and distribution subsidiary of USHealth Group, Inc., a United Healthcare Company United Healthcare, Inc.) ("United Healthcare"), allow inspection and copying of the following list of documents. These documents must be available within forty-five (45) days after service hereof, at the law offices of THE CONSUMER PROTECTION FIRM, 401 E. Jackson Street, Suite 2340, Truist Place, Tampa, Florida. 33602; or as the Court deems.

**DEFINITIONS**

1. "Defendant" "You," and "Your" means "United Healthcare" any of its directors, officers, sales, agents, collection agents, debt collectors, managers, supervisors, general agents, agents (including attorneys, accountants, consultants, investment advisors or bankers), employees, representatives and any other persons purporting to act on their behalf. These defined terms include divisions, affiliates, subsidiaries, predecessor entities, acquired entities and/or related entities or any other entity acting or purporting to act on its behalf, including those who made calls, or who it caused to make calls, to Plaintiff's "cellular telephone number" from any telephone number.

2. "Call," "called," "telephone call," "telephone calls made", "calls made," and/or "made telephone calls", "make telephone calls," shall mean each and every telephone call, dialed call, made call, dialed call attempt, call attempt, call placed, effort to communicate by telephone (**including text messages**), and/or an attempt or try to communicate by telephone (**including text messages**), regardless of whether such call was answered or a message was left.[1]

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise);

4. "Concerning" means referring to, describing, evidencing, or constituting.

5. "Consent" or "Prior Express Written Consent" shall be defined as that term is used in Fla. Stat. § 501.059(1)(g).

[1] A text message qualifies as a call under the Florida Telephone Solicitation Act ("FTSA"). *See* Fla. Stat. § 501.059(1)(j) ("'Telephonic sales call' means a telephone call, text message, or voicemail transmission . . . .").

6. "Document" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). Under Rule 34(a), documents include electronically stored information—including drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into reasonably usable form;

7. Florida Telemarketing Act means the Florida Telephone Solicitation Act ("Florida Telemarketing Act"), Fla. Stat. § 501.059, as amended by Senate Bill No. 1120. [2]

8. "Telephonic Sales Call" means a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes.

9. "Person" means any natural Person or any business, legal or governmental entity or association; and

10. "Plaintiff" or "Plaintiffs" shall mean Delmarie Alicea. Plaintiff is a representative of all persons or entities in Florida who: (1) were sent a text message regarding Defendant's goods and/or services, (2) without his or her prior, express written consent, (3) using an automated system for the selection or dialing of telephone numbers, (4) on or after July 1, 2021.

11. "Plaintiff's cellular phone number" or "Plaintiff's cellular telephone" at all times material hereto was, and shall mean, (407) xxx-2350.

12. The term "Marketer" refers to a Person or entity authorized, retained, or compensated to sell or promote the sale of Your goods or services.

---

[2] The amendment to the Florida Telephone Solicitation Act became effective on July 1, 2021

13. The term "Lead Generator" refers to a Person or entity who generates sales leads used to promote the sale of Your goods or services.

14. If no time period is specified in the request, assume the time period requested and/or referred to is the time period of July 1, 2021, through present.

15. If a term is not defined, the term shall be given its ordinary and plain meaning.

## INSTRUCTIONS

1. Regarding any Document You withhold on a claim of privilege or immunity, please provide:

   a. The name of the sender of the Document;

   b. The name of the author of the Document;

   c. The name of the Persons to whom copies were sent or otherwise provided;

   d. The job title of every Person named in (a), (b) and (c) above;

   e. The date of the Document;

   f. The date on which the Document was received by each addressee or other recipient;

   g. A description of the nature and subject of the Document; and

   h. The factual and legal basis for the assertion of the privilege or immunity.

2. These requests for production of documents are deemed to be continuing in nature, calling for further responses at such time as additional information or documents become known or reasonably available to Defendants.

## REQUESTS FOR PRODUCTION

*Documents Relating to Interrogatory Responses*

1. Please produce all Documents Concerning the Plaintiff's First Set of Interrogatories.

2. Please produce all Documents referred to or relied upon in responding to the Plaintiff's First Set of Interrogatories.

3. Please produce all Documents in Your possession, custody or control that You may use to support Your claims or defenses.

4. Please produce all insurance agreements under which an insurance business may be liable to satisfy all or part of a possible judgment or to indemnify or reimburse for payments made to satisfy the judgment.

5. Please produce all Documents Concerning coverage or reserving rights regarding any insurance agreements described in the preceding request. This request seeks correspondence, internal Documents, and Documents Concerning any actual or threatened insurance-related litigation.

*Florida Telephone Solicitation Act Compliance*

6. Please produce all Documents Concerning Your efforts to comply with the Florida Telemarketing Act. This request seeks Documents that include, but are not limited to Documents:

    a. Regarding any Person or entity considered for approval to market and sell Your goods and services, all Documents Concerning Your pre-approval investigation or due diligence;

b. Concerning Your review or approval of any Telephonic Sales Calls scripts, messages, advertisements, or campaigns used to promote the sale of Your goods or services;

c. Concerning Telephonic Sales Calls (or texts) or telemarketing complaints lodged by any Person or government entity relating to the sale or promotion of Your goods or services;

d. Concerning Your investigation of, and responses to, those complaints, including any internal correspondence, emails, notes, etc.;

e. Concerning any disposition of those complaints by any court, government entity, or informal adjudicative body (such as the BBB);

f. Concerning any disciplinary measures, reprimands, or similar actions taken against Your employees or others who use Telephonic Sales Calls (or texts) or telemarketing to promote and sell Your goods or services.

g. sent to or received from any local, state, or federal government agency Concerning the Florida Telemarketing Act; and

h. Concerning any policies, procedures or training provided or required by You to ensure compliance with the Florida Telemarketing Act.

6. Regarding any Person or entity Identified in response to Interrogatory No. 3, please produce (a) all written agreements Concerning the promotion, marketing, or sale of Your goods or services, including amendments and correspondence regarding the agreements, and (b) all Documents Concerning Telephonic Sales Calls to Floridians.

7. Please produce all Documents Concerning the content and use of scripts for responding to complaints regarding Telephonic Sales Calls or telemarketing.

*Telephonic Sales Call Records/Documents*

8. Please produce Documents Concerning all Telephonic Sales Calls (including attempted calls or text messages) made by You, Marketers, Lead Generators, or other third parties to promote the sale of Your goods or services, in Florida since July 1, 2021.

9. Please produce Documents Concerning all Telephonic Sales Calls (including attempted calls or text messages) made by You, Marketers, Lead Generators, or other third parties to promote the sale of Your goods or services, to Plaintiff's Cellular Telephone.

*Consent*

9. If You assert the affirmative defense of prior express written consent regarding any Telephonic Sales Call alleged in this case, please produce all Documents that support that defense.

*Technological Information*

10. Please produce all Documents Concerning any automated telephone system, software or equipment used by You or other Persons or entities who use Telephonic Sales Calls (or texts) to promote the sale of Your goods or services.

11. Please produce all Documents Concerning how many telephone calls were sent out by the automated telephone system, software or equipment that played a recorded message, or sent messages to to Plaintiff from July 1, 2021, to present.

*Authorized Dealer/Authorized Marketer/Lead Generator/Vendor Agreements*

12. Please produce all Documents Concerning Your agreements with Persons or entities Identified in response to Interrogatory No. 3.

13. Please produce all Documents between You and Persons or entities Identified in response to Interrogatory No. 3 regarding Telephonic Sales Calls (or texts).

14. Please produce all Documents regarding telemarketing by any Person or entity Identified in response to Interrogatory No. 3.

15. Please produce all Documents Concerning any awards, certificates, honors, sales rankings, performance incentives, publication features (*e.g.,* newsletter articles) or similar recognitions You provided to any Person or entity Identified in response to Interrogatory No. 3.

16. Please produce all "dealer application" and "vendor application" packets and related Documents. The requested Documents include, without limitation, those submitted by entities who use telemarketing to promote and sell Your products, and are seeking Your approval or agreement to provide their services.

*Scripts and Recordings*

17. Please produce any scripts used for Telephonic Sales Calls (or texts) placed by You, Authorized Dealers, Authorized Marketers, Lead Generators, or vendors to promote the sale of Your goods or services, in Florida.

16. Please produce any recordings of Telephonic Sales Calls (or texts) placed by You, Authorized Dealers, Authorized Marketers, Lead Generators, or vendors to promote the sale of Your goods or services, in Florida.

*Litigation Holds*

19. Please produce all litigation hold notices sent to or received from any Person or entity for this case, or for any of the cases consolidated in this Court.

Dated: March 8, 2023

Respectfully submitted,


_/s/ William "Billy" Peerce Howard_
**William "Billy" Peerce Howard, Esq**.
Florida Bar No.: 0103330
**Amanda J. Allen, Esquire**
Florida Bar No.: 98228
THE CONSUMER PROTECTION FIRM, PLLC
401 East Jackson Street, Suite 2340
Tampa, Florida 33602
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com
Brenda@TheConsumerProtectionFirm.com
*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on the March 8, 2023, a copy of Plaintiff's First Set of Requests for Production of Documents to Defendant United Healthcare, Inc., were served via process server to the Registered Agent for Defendant.

Respectfully submitted,


_/s/ William "Billy" Peerce Howard_
William "Billy" Peerce Howard, Esq.
Florida Bar No.: 0103330

IN THE COUNTY/CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT, IN AND FOR ORANGE AND OSCEOLA COUNTY, FLORIDA

IN RE: CIVIL CASE MANAGEMENT
PLAN AND ORDER

_______________________________________/

**STANDING CASE MANAGEMENT PLAN/ORDER**
**(Streamlined Track)**

**PURSUANT TO** ***In re: Comprehensive COVID-19 Emergency Measures for Florida Trial Courts*****, Fla. Admin. Order No.** **AOSC20-23 (Amendment 12)** **(April 13, 2021)**, and Ninth Judicial Circuit Court Administrative Order No. 2021-04 (collectively the "Case Management Administrative Orders"), this case is before the Court for case management. Based on the case type of the initial filing in this case, the Case Management Administrative Orders, and pursuant to Rule 2.545, Fla. R. Gen. Prac. & Jud. Admin., the Court hereby establishes a case management plan. It is hereby

**ORDERED** that:

1. **COMPLIANCE WITH THIS CASE MANAGEMENT PLAN/ORDER:** The parties shall strictly comply with the terms of this Case Management Plan/Order, unless otherwise ordered by the Court. FAILURE TO COMPLY WITH ALL REQUIREMENTS OF THIS ORDER WILL RESULT IN THE IMPOSITION OF SANCTIONS. If the parties believe that an alternate plan is required or more appropriate, then the parties shall meet, confer and agree on a plan that complies with the time standards set forth in Rule 2.250, Fla. R. Gen. Prac. & Jud. Admin. The parties may submit an agreed upon plan to the division judge for consideration, or set the matter for a case management conference.

2. **ADDITIONAL NINTH CIRCUIT AND DIVISION SPECIFIC GUIDELINES:** All counsel and unrepresented parties shall familiarize themselves and comply with the requirements of the following: (i) **Amended Administrative Order Establishing the Ninth Judicial Circuit Court Circuit Civil Court Guidelines** **(AO 2012-03-01)**; (ii) **Amended Administrative Order Establishing the Ninth Judicial Circuit Courtroom Decorum Policy** **(AO 2003-07-02)**; (iii) **Amended Administrative Order Establishing the Ninth Judicial Circuit Court County Civil Court Guidelines, Orange County** **(AO2017-04-01)** and (iv) **any division-specific guidelines that may be applicable**.

3. **MODIFICATION OF THIS ORDER:** The parties may not, individually or by agreement, alter or extend the deadlines in this Order, or waive any of the provisions of this Order. The provisions of this Order may be modified only upon motion/stipulation and Court order in accordance with applicable law.

4. **SERVICE OF THIS ORDER WITH INITIAL PROCESS:** Pursuant to the Case Management Orders, the Plaintiff shall file a copy of this Order in the case. Any party serving an initial pleading (complaint, third-party complaint, etc.) in this case shall serve a copy of this Order together with initial service of process.

**CASE MANAGEMENT PLAN – STREAMLINED TRACK**

*Note: All dates are to be calculated from the date of filing of the initial complaint unless otherwise noted.*

| | |
|---|---|
| Deadline for Service of Process: | 120 days |
| Deadline for Service of Process extended if not accomplished within 120 days: | 150 days, failing same, all unserved defendants are dismissed without prejudice |
| Deadline for Leave to Add Parties and Amend Pleadings: | Motions must be set for hearing and heard within 60 days from service on the last defendant, or deemed abandoned and denied |
| Motions to Dismiss, Motions for More Definite Statement, Motions to Strike and any objections to the pleadings: | Must be set for hearing and heard within 45 days from filing of the motion/objection, or deemed abandoned and denied. Non-movant shall timely submit a proposed order in the event the motion/objection is deemed abandoned and denied |
| Deadline for Completion of Fact and Expert Discovery: | 275 days (additional disclosure and discovery deadlines will be established by the Uniform Order Setting Pre-Trial and Trial in the case) |
| Pre-trial Motions, including Dispositive and *Daubert* Motions | Must be filed no later than 15 days after completion of discovery and heard no later than 7 days prior to the pre-trial conference, or deemed abandoned and denied |
| Mediation/Alternative Dispute Resolution | Within 30 days after completion of the depositions of all parties, counsel shall meet and confer regarding whether an early mediation would be productive to resolution of certain issues or the entire case. A final mediation shall occur no later than 30 days after completion of all discovery |

| | |
|---|---|
| Approximate Pre-Trial Conference: | 11 months<br>*Actual Date to be set by Trial Order* |
| Approximate Trial Date: | 12 months<br>*Actual date to be set by Trial Order* |

5. **NOTICES FOR TRIAL:** Within ten (10) days of the case being at issue as defined by Rule 1.440, Fla. R. Civ. P., the Plaintiff shall confer with opposing counsel/party regarding the anticipated length of trial and file a Notice for Trial. The Plaintiff shall forward a copy of the Notice for Trial to the Judicial Assistant at the Division email address noted on the Ninth Circuit website.

6. **DISCOVERY:** All counsel and unrepresented parties shall familiarize themselves with the current edition of the Florida Handbook on Civil Discovery Practice and seek to resolve discovery issues without court intervention whenever possible.

7. **SETTLEMENT:** *The case will not be removed from the docket until all documents necessary for closure of the case are filed with the Clerk and notification has been provided to the judicial assistant. A notice of settlement is not sufficient to remove the case from the trial docket.*

**DONE AND ORDERED** in Orange/Osceola County, Florida.

Chief Judge

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator in your county at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days. If you are hearing or voice impaired, call 711.**

**ORANGE COUNTY: Human Resources, Orange County Courthouse, 425 N. Orange Avenue, Suite 510, Orlando, Florida, (407) 836-2303**

**OSCEOLA COUNTY: Court Administration, Osceola County Courthouse, 2 Courthouse Square, Suite 6300, Kissimmee, Florida, (407) 742-2417**

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
CIVIL DIVISION**

DELMARIE ALICEA,

Plaintiff, CASE NO.: 2023-CA-001967-O

v.

USHEALTH ADVISORS a wholly-owned national sales and distribution subsidiary of USHEALTH GROUP, INC., a UNITED HEALTHCARE COMPANY (United Healthcare, Inc.)

Defendant.
_________________________________/

**PLAINTIFF'S NOTICE OF FILING EXHIBIT A AND B, INADVERTENTLY OMITTED FROM THE COMPLAINT FILED ON MARCH 8, 2023**

PLEASE TAKE NOTICE, the Plaintiff, individually and on behalf of all others similarly situated by and through his undersigned counsel, file this Notice of Filing Exhibit A and Exhibit B, Inadvertently Omitted from the Complaint Filed on March 8, 2023.

Respectfully submitted,

*/s/ William "Billy" Peerce Howard*
William "Billy" Peerce Howard, Esq.
Florida Bar No. 0103330
Amanda J. Allen, Esq.
Florida Bar No. 0098228
THE CONSUMER PROTECTION FIRM, PLLC

401 East Jackson Street, Suite 2340
TRUIST PLACE
Tampa, FL 33602
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com

Michael Dell'Angelo, Esquire
PA Bar No.: 80910
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4606
mdellangelo@bm.net

John W. Barrett (WV Bar No. 7289)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: 304-345-6555
Facsimile: 304-342-1110
JBarrett@baileyglasser.com

*Counsel for Plaintiff and the putative class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 17, 2023, the foregoing was filed and will be served upon all Defendant's Registered Agent, via process server.

*/s/ William "Billy" Peerce Howard*
William "Billy" Peerce Howard, Esq.
Florida Bar No. 0103330

Filing # 168945780 E-Filed 03/17/2023 10:08:09 AM

# Exhibit A

The Florida Senate

# BILL ANALYSIS AND FISCAL IMPACT STATEMENT

(This document is based on the provisions contained in the legislation as of the latest date listed below.)

Prepared By: The Professional Staff of the Committee on Regulated Industries

BILL: CS/SB 1120

INTRODUCER: Regulated Industries Committee and Senators Gibson and Powell

SUBJECT: Commercial Telephone Solicitation

DATE: March 25, 2021 REVISED:

| | ANALYST | STAFF DIRECTOR | REFERENCE | ACTION |
|---|---|---|---|---|
| 1. | Harmsen | McKay | CM | **Favorable** |
| 2. | Sharon | Imhof | RI | **Fav/CS** |
| 3. | | | RC | |

**Please see Section IX. for Additional Information:**

COMMITTEE SUBSTITUTE - Substantial Changes

## I. Summary:


CS/SB 1120 requires all sales telephone calls, text messages, and direct-to-voicemail transmissions to have the receiving consumer's prior express written consent if the call will be made using an automated machine to dial the recipient's phone number or will play a recorded message upon connection with the recipient.

The bill creates a rebuttable presumption that a sales call made to a Florida area code is made either to a Florida resident or to a person in this state at the time of the call.

The bill creates a private right of action to enforce the provisions in the bill. An aggrieved party may petition a court to enjoin the violating party. A prevailing plaintiff may recover the greater sum of either their actual monetary damages or $500, plus attorney fees and costs. Additionally, a court may increase damages by up to three times, for a willful or knowing violation.

The bill amends the Florida Telemarketing Act to prohibit telephone sellers or salespersons from calling consumers outside of the hours between 8 a.m. and 8 p.m. in the consumer's time zone and prohibits telephone sellers or salespersons from contacting consumer on the same subject matter more than three times in a 24-hour period. The bill also clarifies that calls made through an automated dialer or recorded message are subject to the same prohibitions.

The bill is effective July 1, 2021.

## II. Present Situation:

### Unsolicited Phone Calls

Consumers are often inundated with unwanted calls. In fiscal year 2020, the Federal Trade Commission (FTC) received 293,071 complaints from Florida consumers about unwanted telephone calls.[1] The Federal Communications Commission (FCC) reports that unwanted calls constitute their top consumer complaint.[2] Unwanted calls can come in many forms, including robocalls[3], which use an "automatic telephone dialing system,"[4] referred to as an autodialer, and play a recorded message upon connection with the consumer; "spoofing" or "spoofed calls," which transmit falsified information to a consumer's caller ID to disguise the solicitor's identity; and unwanted telemarketing calls.[5]

State and federal action to combat these issues are limited because there are legitimate and legal uses of this technology. For example, a doctor's office may legally use a robocall to remind one of an upcoming appointment.[6] Additionally, some solicitors act outside the scope of federal or state enforcement authority.

### Federal Law

#### *Telephone Consumer Protection Act*[7]

The Telephone Consumer Protection Act of 1991 (TCPA) protects U.S. consumers from unwanted communications by restricting the use of autodialers, prerecorded sales messages, and unsolicited sales calls, text messages, or faxes.

The TCPA prohibits telephone solicitations that:

- Are made to residences before 8 a.m. and after 9 p.m.;

---

[1] Federal Trade Commission, *Do Not Call Data Book 2020* (Oct. 2020), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2020/dnc_data_book_2020.pdf (last visited Mar. 17, 2021).

[2] Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Mar. 17, 2021).

[3] "At the FCC, we use the term 'robocalls' to refer not to just prerecorded calls but also autodialed calls, regardless of whether the call is live or prerecorded." *Stopping Fraudulent Robocall Scams: Can More Be Done?*, Hearing Before the S. Subcomm. on Consumer Protection, Product Safety, and Insurance of the Comm. on Commerce, Science, and Transportation, 130th Cong. (July 10, 2013) (Statement of Eric J. Bash, Associate Chief, Enforcement Bureau, Federal Communications Commission) https://www.govinfo.gov/content/pkg/CHRG-113shrg85765/pdf/CHRG-113shrg85765.pdf (last visited Mar. 17, 2021).

[4] An "automatic telephone dialing system" or "autodialer" is equipment that has the capacity to produce or store phone numbers using a random or sequential number generator, and to call those phone numbers. 47 U.S.C. s. 227(a)(1).

[5] "Fraudsters have also further exploited caller ID spoofing, which induces the consumer to pick up the phone, while at the same time enabling the scammer to hide its identity and location." *Stopping Fraudulent Robocall Scams,* Hearing, *supra* at n. 3 (Statement of Lois Greisman, Associate Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

[6] Federal Communication Commission, Consumer and Governmental Affairs Bureau, *Report on Robocalls* (Feb. 2019), CG Docket No. 17-59, https://www.fcc.gov/document/fcc-issues-report-illegal-robocalls (last visited Mar. 17, 2021). *See also*, Federal Communications Commission, *Stop Unwanted Calls and Texts--Spoofing*, (Mar. 2, 2021) https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Mar. 17, 2021).

[7] 47 U.S.C. s. 227. *See also*, 47 CFR s. 64.1200 (2012).

- Fail to provide the consumer with the solicitor's identity, including his or her true phone number via caller identification service,[8] and an opportunity to opt out of the current call, and all future calls, made by that solicitor;
- Send artificial or pre-recorded messages to a residential line; and
- Use an autodialer, artificial message, or pre-recorded messages to a cellular, emergency, or hospital room line.

The TCPA grants a private right of action to pursue actual monetary damages or up to $500 per violation.[9] State attorneys general and the FCC also have jurisdiction to investigate and file civil claims based on violations of the TCPA.[10]

The TCPA's protections extend to text messaging in the same manner that they apply to telephone calls.[11]

***Federal Do Not Call Program***

The FTC, in concert with the FCC, administers the National Do Not Call Program.[12] Telephone solicitors may not contact a consumer who participates in the National Do Not Call Program, unless the calls are:

- Made with a consumer's prior, express permission;
- Informational in nature, such as those made to convey a utility outage, school closing, or flight information; or
- Made by a tax-exempt organization.[13]

***Truth in Caller ID Act***

The Truth in Caller ID Act of 2009[14] protects consumers by prohibiting any person from transmitting misleading or inaccurate caller ID information with the intent to defraud, cause harm, or wrongfully obtain anything of value. The FCC investigates and prosecutes violations of the act under its rules.[15] The FCC has taken enforcement actions totaling $450 million in fines, in recent years against telemarketers for call spoofing violations—of note, the FCC imposed its largest fine ever against a Florida-based timeshare marketing operation.[16]

---

[8] 47 C.F.R. s. 64.1601(e). *See also*, Federal Communications Commission, *Public Notice: FCC's Caller ID Rules for Telemarketers Become Effective* (Jan. 29, 2004) https://apps.fcc.gov/edocs_public/attachmatch/DA-04-206A1.pdf (last visited Mar. 17, 2021).

[9] 47 U.S.C. s. 227 (c)(5).

[10] 47 U.S.C. s. 227 (f).

[11] Federal Communications Commission, *FCC Strengthens Consumer Protections against Unwanted Calls and Texts* (Jun. 18, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333993A1.pdf (last visited Mar. 17, 2021).

[12] Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Mar. 17, 2021).

[13] 47 U.S.C. s. 227(a)(4). *See also,* 47 C.F.R. s. 64.1200.

[14] 47 U.S.C. s. 227 (e).

[15] *See*, 47 CFR s. 64.

[16] Federal Communications Commission, *The FCC's Push to Combat Robocalls & Spoofing,* https://www.fcc.gov/spoofed-robocalls (last visited Mar. 17, 2021). *See also*, Federal Communications Commission, *FCC Fines Massive Neighbor Spoofing Robocall Operation $120 Million* (May 10, 2018) https://www.fcc.gov/document/fcc-fines-massive-neighbor-spoofing-robocall-operation-120-million (last visited Mar. 17, 2021).

To protect individual privacy concerns, an individual caller may still request to hide his or her phone number when making a call.[17]

**Florida Law**

***Florida Telemarketing Act***

The Florida Telemarketing Act (Telemarketing Act)[18], requires commercial telephone sellers, usually a business entity, and their individual salespersons to obtain a license from the Department of Agriculture and Consumer Services (department). An applicant for licensure as a commercial telephone seller must submit, among other information:

- Its criminal, civil, and administrative disciplinary background;
- All phone numbers from which the applicant will solicit business and the physical address at which the phones will be located;
- The script it will use during a solicitation, or any informational literature it will provide to a consumer; and
- A bond, letter of credit, or certificate of deposit to serve as security in any future case of fraud, breach of contract, financial failure, or violation by the licensee.[19]

As part of their licensure, individual salespersons, who are hired by commercial telephone sellers to act as their salespersons, undergo a similar review of their criminal, civil, administrative or regulatory disciplinary history, but they are not required to post a bond, letter of credit, or certificate of deposit.[20]

Many solicitors are exempt from licensure under the Telemarketing Act, including religious, charitable, political, or educational organizations that have a s. 501(c)(3) or (6) exemption from the Internal Revenue Code; licensed securities, commodities, or investment brokers and dealers; and newspaper or cable television sellers, among others.[21]

Licensed telephone sellers and solicitors must identify themselves to the consumer within 30 seconds of the beginning of the phone call.[22] To ensure that the department can conduct thorough investigations, when needed, a licensed telephone seller must also maintain copies of their business records for at least two years—including all of the names and telephone numbers that they contacted.[23]

All telephone sellers and solicitors, whether exempt or not, are prohibited from calling consumers outside of the hours between 8:00 a.m. and 9:00 p.m., local time, in the called person's time zone.[24] Additionally, all solicitors must allow their name or telephone number to

---

[17] 47 CFR s. 64.1601.
[18] Part IV of ch. 501, F.S.
[19] Section 501.605, F.S.
[20] Section 501.607, F.S.
[21] *See*, s. 501.604, F.S.
[22] Section 501.613, F.S.
[23] Section 501.6175, F.S.
[24] Section 501.616(6). *See also*, s. 501.604, F.S., which provides a general exemption from the Telemarketing Act, "except ss. 501.608 and 501.616(6) and (7)."

be transmitted to the consumer if the equipment they use is capable.[25] This prevents solicitors from "spoofing' a different number or otherwise blocking their caller identification to induce a consumer to answer the phone.

***Florida Do Not Call Act***

<u>Do Not Call List</u>
The department also administers the Florida Do Not Call Act (also called the "Do Not Call List"), which prohibits unsolicited phone calls and text messages.[26] Residents who do not wish to receive sales calls may request to have their residential, mobile, or paging device telephone number included on the department's list.[27]

A communication is unsolicited, and therefore prohibited under the Do Not Call List, unless the contact is made:
- At the consumer's request;
- By a charitable or political organization that is seeking donations;
- As part of a survey, or for the purpose of research seeking an opinion;
- In connection with an existing debt or contract for which payment is due; or
- By a newspaper publisher, or his or her agent or employee, in connection with the publisher's business.[28]

<u>Continued Solicitations</u>
Section 501.059, F.S., further prohibits a telephone solicitor[29] from calling, text messaging, sending a direct voicemail transmission, or using automated telephone equipment to contact any consumer who has previously communicated to the solicitor that he or she does not wish to receive a telephone call, whether or not he or she is part of the Do Not Call List. However, this prohibition applies only to calls made by or on behalf of a seller who offers goods or services or a charity that solicits a charitable contribution.

<u>Automated Dialers and Recorded Messages</u>
Section 501.059(8), F.S., prohibits solicitations via telephone calls, text messages, and direct-to-voicemail transmissions if the communication is initiated with an automated system that selects or dials the telephone numbers (autodialer), or if the communication plays a recorded message upon connection with the consumer. Autodialed calls and recorded messages are permitted if (1) they are in response to a call that the consumer initiated, (2) the person initiating the call screens out unlisted telephone numbers and numbers that are on the Do Not Call list, or (3) made regarding goods or services that the consumer previously purchased.

This section also prevents call spoofing (in cases of solicitation calls), where a telephone call, text message, or direct-to-voicemail transmission does not transmit the correct originating

---

[25] Section 501.616(7), F.S.
[26] *See*, s. 501.059, F.S. Florida Department of Agriculture and Consumer Services, *Florida Do Not Call*, https://www.fdacs.gov/Consumer-Resources/Florida-Do-Not-Call (last visited Mar. 17, 2021).
[27] Section 501.059(3)-(4), F.S.
[28] Section 501.059(1)(h), F.S.
[29] Section 501.059(1)(f), F.S., defines a 'telephone solicitor' as a natural person or business that does business in this state by making or causing to be made a telephone sales call.

telephone number; and fraudulent attempts to disguise the caller's identity in order to defraud, confuse, or otherwise injure the call's recipient.

*Penalties*
A telephone solicitor who violates the provisions of the Florida Do Not Call Act is subject to a civil penalty with a maximum fine of $10,000 per violation, or an administrative fine with a maximum of $1,000 per violation, in addition to attorney's fees and costs.[30] The act does not provide for a private cause of action. The Department of Agriculture and Consumer Services and the Office of the Attorney General have exclusive enforcement authority.

## III. Effect of Proposed Changes:

**Section 1** amends s. 501.059, F.S., to require any person making a sales call using an autodialer or playing a recorded message upon connection with the consumer to obtain signed prior express written consent from the consumer.

The bill defines the terms "called party," "prior express written consent," and "signature."

Under the bill, "called party" means a person who is the regular user of the telephone number receiving telephonic sales calls.

"Prior express written consent" is defined by the bill to mean a written agreement that has the signature of the called party; authorizes the person making the call, text, or voicemail to deliver it using an automated system or recorded message; includes the number authorized to be contacted; and includes a clear and conspicuous disclosure informing the called party that they are:
- Authorizing the call to be made using an automated system or recorded message; and
- Not required to sign the written agreement as a condition of purchasing any property, goods, or services.

"Signature" means an electronic or digital signature recognized as valid under applicable federal or state contract law.

The bill deletes the provision authorizing the use of automated telephone dialing systems when:
- The call is made in response to calls initiated by the called party;
- The number called has been screened to exclude numbers on the DACS "no sales solicitation calls" list or any unlisted telephone number; or
- The call concerns goods or services previously purchased by the called party.

A rebuttable presumption is created by the bill, that a sales call made to any area code in the state is made to a Florida resident or a person in the state at the time of the call.

The bill provides a private cause of action for violations to s. 501.059, F.S., which allow the aggrieved party to obtain an injunction and recover their actual monetary damages or $500, whichever is greater. It authorizes a court to increase the award for willful and knowing

[30] Section 501.059(9), F.S.

violations and revises the attorney fees and costs provision from being available to the prevailing party to only being available in favor of a prevailing plaintiff.

**Section 2** amends s. 501.616(6), F.S., to reduce the hours during which telephone sellers and salespersons may call consumers. Currently, telephone sellers and salespersons may solicit between 8 a.m. and 9 p.m. local time in the consumer's location. The bill permits solicitations during 8 a.m. and 8 p.m. in the consumer's time zone.

The bill further prohibits telephone sellers and salespersons from calling a consumer more than three times over a 24-hour period about the same subject matter. This prohibition applies, regardless of the phone number a telephone seller or salesperson uses to call the consumer.

The bill also applies these prohibitions to a commercial telephone seller or salesperson's use of an automated dialer or recorded message.

The provisions of the bill will apply to licensed telephone sellers and salespersons, and those entities who solicit under the s. 501.604, F.S., licensure exemptions of the Telemarketing Act.

**Sections 3 and 4** reenact ss. 501.604 and 648.44(1)(c), F.S., respectively, to incorporate the changes made to s. 501.616, F.S.

**Section 5** provides that the bill takes effect July 1, 2021.

## IV. Constitutional Issues:

### A. Municipality/County Mandates Restrictions:

None.

### B. Public Records/Open Meetings Issues:

None.

### C. Trust Funds Restrictions:

None.

### D. State Tax or Fee Increases:

None.

### E. Other Constitutional Issues:

In *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, the Supreme Court of the United States held that commercial speech should receive First Amendment protections.[31] The Court based its opinion on the public's right to receive a

[31] *See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 96 S. Ct. 1817 (1976).

free flow of commercial information.[32] Although commercial speech does receive protection, it is below the protection provided to completely protected speech, and states retain the ability to regulate commercial speech that is inherently misleading or that has proven to be misleading in practice.[33]

In *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, the Supreme Court of the United States established a four-part test for analyzing the limitations of advertising regulations.[34] Under the *Central Hudson* test, a state must show that any commercial speech regulation is aimed at regulating lawful and "non-misleading" commercial speech in service of a substantial state interest, in a manner that directly advances that interest, and that is no more extensive than necessary to serve that interest.[35] Although commercial speech regulations must meet the *Central Hudson* test, in *Bates v. State Bar of Arizona*, the Supreme Court held that reasonable time, place, and manner restrictions on advertising is authorized if the content or subject matter is not regulated.[36]

A state law that has the practical effect of regulating commerce that occurs entirely outside of the state's borders is invalid under the Commerce Clause of the of the U.S. Constitution, regardless of its intent to reach outside of the state's borders.[37] Conversely, the dormant commerce clause prohibits states from enacting laws that unduly burden interstate commerce.[38]

A Florida law that prohibited persons from causing false information to be displayed on the call recipient's caller ID system was found to impermissibly regulate commerce wholly outside of Florida by making it impossible for parties to use or offer caller ID spoofing services anywhere.[39] The Court reasoned that the law affected interstate commerce because the increased use of mobile phones and call forwarding make it impossible to be certain where the parties called are located.

> For example, a business located in New York might place a call, using caller ID spoofing services, to a telephone number with an Ohio area code. Because of call forwarding and the mobility of cellular telephones, the recipient of that call might be present in Florida, and the New York business would be criminally liable for violating [the law] when they called the Ohio telephone number. . . . The logical consequence of this impossibility is that Plaintiffs are unable to offer caller ID spoofing services anywhere in the country without risking criminal liability under Florida's statute.[40]

---

[32] *Id.*
[33] *See In re R.M.J.*, 102 S. Ct. 929 (1982).
[34] *See Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 100 S. Ct. 2343 (1980).
[35] *Id.*
[36] *See Bates v. State Bar of Arizona*, 97 S. Ct. 2691 (1977).
[37] *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 332 (1989). *See also*, U.S. CONST. art. 1 § 8, cl. 3.
[38] *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844 (1970).
[39] *Taltech Systems, Inc. v. McCollum*, 2009 WL 10626585 (S.D. Fla. July 16, 2009).
[40] *Id.*

As recently as 2020, the United States District Court for North Dakota used the reasoning in this Florida case to rule that a North Dakota anti-spoofing statute violated the Commerce Clause, despite an exemption that would have exculpated the caller if they reasonably believed the called-party was not physically within North Dakota.[41]

It is unclear whether the bill's presumption regarding Florida area codes will have an effect on interstate commerce to an extent that it has the practical effect of regulating commerce outside of Florida's borders.

## V. Fiscal Impact Statement:

### A. Tax/Fee Issues:

None.

### B. Private Sector Impact:

None.

### C. Government Sector Impact:

The bill adds prohibited acts to the Florida Telemarketing Act. The department, as enforcing authority of the act, estimates that is may see an increase in consumer complaints and prosecutions as a result; it also states that it will be required to expand its rulemaking to allow for implementation of these changes. The department states that this may result in an indeterminate costs to the department.[42]

## VI. Technical Deficiencies:

None.

## VII. Related Issues:

None.

## VIII. Statutes Affected:

This bill substantially amends s. 501.616, F.S.

This bill reenacts the following sections of the Florida Statutes ss. 501.604 and 648.44, F.S.

---

[41] *SpoofCard, LLC v. Burgum*, No. 1:19-CV-00276, 2020 WL 7234159 (D.N.D. Nov. 9, 2020).

[42] Department of Agriculture and Consumer Services, *SB 1120 Agency Analysis* (Feb. 24, 2021) (on file with the Senate Committee on Regulated Industries).

## IX. Additional Information:

### A. Committee Substitute – Statement of Substantial Changes:

(Summarizing differences between the Committee Substitute and the prior version of the bill.)

**CS by Regulated Industries on March 9, 2021:**
**The Committee Substitute:**

- Amends s. 501.059, F.S., relating to Telephone solicitation.
- Defines the terms "called party," "prior express written consent," and "signature."
- Prohibits sales calls without prior express written consent of the called party.
- Removes the provision of law authorizing the use of automated telephone dialing systems under certain circumstances.
- Provides a rebuttable presumption that a sales call made to any area code in the state is made to a Florida resident or a person in the state at the time of the call.
- Provides a cause of action, which allows the aggrieved party to obtain an injunction and recover their actual monetary damages or $500, whichever is greater.
- Authorizes a court to increase the award for willful and knowing violations.
- Revises the attorney fees and costs provision to be in favor of a prevailing plaintiff.

### B. Amendments:

None.

This Senate Bill Analysis does not reflect the intent or official position of the bill's introducer or the Florida Senate.

Hi, Delmarie! Just following up regarding your healthcare! I have access to public and private health plans in your area. Can I send you a quote?

Hey, Delmarie! Are you still inquiring about affordable healthcare? I have access to everything available in the area. Single or family plan?

Hi, Delmarie! Do you still need to get your healthcare taken care of? I have access to everything in the area. Can I send you a quick quote?

Filing # 169774792 E-Filed 03/28/2023 09:56:54 AM

**IN THE CIRCUIT/COUNTY COURT OF THE NINTH JUDICIAL CIRCUIT,**

**IN AND FOR ORANGE COUNTY, FLORIDA**

DELMARIE ALICEA, individually and on behalf of all others similarly situated
Plaintiff(s)

Case Number: 2023-CA-1967-O

Division: ________________

vs

USHEALTH ADVISORS a wholly-owned national sales and . distribution subsidiary of USHEALTH GROUP, INC., a UNITED HEALTHCARE COMPANY (United Healthcare, Inc.)
Defendant(s)

**SUMMONS**

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on defendant(s) **USHealth Advisors, a whilly-owned national sales and distribution subsidiary of USHealth Group, Inc., a United Healthcare Company (United Healthcare, Inc.) c/o Registered Agent: C T Corporation System, Inc., 1010 Dale St. N., St. Paul, Minnesota, 55117**

Each defendant is required to serve written defenses to the complaint or petition on William Peerce Howard, plaintiff's attorney, whose address is 401 E. Jackson Street, Suite 2340, Tampa, Florida 33602, within 20[1] days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

**DATED** on 3/31/23

Attorney: William Peerce Howard
Attorney For: Plaintiff, Delmarie Alicea
Address: 401 E. Jackson Street, Suite 2340, Tampa, Florida. 33602

Florida Bar Number: 0103330

**TIFFANY M. RUSSELL**
As Clerk of the Court

By: /s/ Brian Williams
Deputy Clerk

**Civil Division**
**425 N. Orange Avenue**
**Room 350**
**Orlando, Florida 32801**

CLERK CIRCUIT COURT • ORANGE COUNTY • FLORIDA

[1] Except when suit is brought pursuant to section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days. When suit is brought pursuant to section 768.28, Florida Statutes, the time to be inserted is 30 days.

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named in the documents.

If the party serving summons has designated email address(es) for service or is represented by an attorney, you may designate email address(es) for service by or on you. Service must be in accordance with Florida Rule of Judicial Administration 2.516. Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit Court's office. You may review these documents upon request. You must keep the Clerk of the Circuit Court's office notified of your current address. (You may file Designation of Current Mailing and Email Address).

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, 425 North Orange Avenue, Suite 340, Orlando, FL 32801, (407) 836-6300, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711**.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 días, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con el Coordinador de ADA, 425 North Orange Avenue, Suite 340, Orlando, FL 32801, (407) 836-6300, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antesde la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.**

**IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**Si vous êtes une personne handicapée qui a besoin de mesures d'adaptation pour participer à cette procédure, vous avez droit, sans frais pour vous, à une certaine assistance. Veuillez contacter le coordinateur de l'ADA, 425 North Orange Avenue, Suite 340, Orlando, FL 32801, (407) 836-6300, au moins 7 jours avant votre comparutionprévue au tribunal, ou immédiatement après avoir reçu cette notification si le délai avant lacomparution prevue est inférieur à 7 jours; si vous êtes malentendant ou avez un trouble dela parole, appelez le 711.**

**Enpòtan**

Pwosedi legal yo te pran kont ou. Ou gen 20 jou konsekitif ki soti nan dat konklizyon sa a pou ou ranpli yon repons alekri pou plent sa a nan tribinal sa a. Yon apel telefon ki senp se pa ase pou pwoteje ou. Ou oblije ranpli repons alekri ou a, ak nimewo a dosye pi wo a ak non pati yo ki te nonmen isit la, si ou vle tribinal la tande ka w la. Si ou pa ranpli repons alekri ou nan rele egzije a, ou riske pedi koz la ak sale ou, lajan ou, ak pwopriyete ou yo ka mete men sou pita, san okenn lot avi nan tribinal la. Gen lot obligasyon legal epi ou ka mande sevis imedya yon avoka. Si ou pa konnen yon avoka, ou ka rele yon sèvis referans avoka oswa yon biwo ed legal (ki nan lis nan anye telefon).

Si ou chwazi pou ou soumet yon repons alekri tet ou, ou pral bezwen tou voye oswa voye yon kopi repons ekri ou nan fòm sa a an menm tan an tankou fomalite sa a "Avoka Pleyan/Pwokire a" (Pleyan oswa avoka li) non anba a.

**Si ou se yon moun ki enfim ki bezwen akomodasyon pou w kab patisipe nan pwosedi sa a, ou gen dwa, san ou pa bezwen peye okenn lajan, pou w jwenn yon sèten èd. Tanpri kontakte 425 North Orange Avenue, Suite 340, Orlando, FL 32801, v, Kòdonatris pwogram Lwa Ameriken pou Moun ki Enfim yo nan fè sa omwen 7 jou anvan dat ou gen randevou pou parèt nan Tribinal la, oswa fè sa imedyatman apre ou fin resevwa konvokasyon an si dat ou gen pou w parèt nan tribunal lamwens pase 7 jou; si ou gen pwoblèm pou w tande byen oswa pou w pale klè, rele 711.**

RCUIT COURT

County of Orange

NINTH JUDICIAL DISTRICT

Delmarie Alicea

Plaintiff,

Court File Number
2023-CA-001967-O

vs.

USHealth Advisors et al.

Defendant,

## Affidavit of Service

State of Minnesota )
County of Hennepin )

I, Neil Hanson, state that on Wednesday, April 5, 2023 at 9:50 AM I served the Summons, Class Action Complaint, Plaintiff's Notice Of Serving First Set Of Interrogatories To Defendant, Plaintiff's First Request For Admissions Directed To Defendant, Plaintiff's Requests For The Production Of Documents To Defendant, Standing Case Management Plan/Order, Plaintiff's Notice Of Filing Exhibit A And B Inadvertently Omitted From The Complaint Filed On March 8 2023, Exhibit A-B, Plaintiff's First Set Of Interrogatories To Defendant upon USHealth Advisors, a wholly-owned national sales and distribution subsidiary of USHealth Group, Inc., therein named, personally at 1010 Dale Street North, St Paul, MN 55117, by handing to and leaving with Bob Gustafson, Agent for CT Corporation System Inc, authorized to accept service, the Registered Agent for USHealth Advisors, a wholly-owned national sales and distribution subsidiary of USHealth Group, Inc., a true and correct copy thereof.

I declare under penalty of perjury that everything I have stated in this document is true and correct. Minnesota Statute § 358.116.

Dated: 4/5/2023 [signature]
Neil Hanson, Process Server

*2593385 - 1*

METRO LEGAL
legal support specialists since 1969

616 South 3rd Street
Minneapolis, MN 55415-1104
(800) 488-8994
www.metrolegal.com

RE: 2023001939

Filing # 171660082 E-Filed 04/24/2023 03:44:27 PM

IN THE CIRCUIT COURT OF THE 9TH
JUDICIAL CIRCUIT, IN AND FOR
ORANGE COUNTY, FLORIDA

CASE NO. 2023-CA-001967-O

DELMARIE ALICEA ,

Plaintiff,

v.

USHEALTH ADVISORS a wholly-owned national sales and distribution subsidiary of USHEALTH GROUP, INC., a UNITED HEALTHCARE COMPANY (United Healthcare, Inc.),

Defendant.
_____________________________________________/

**DFENDANT USHEALTH ADVISORS, LLC'S UNOPPOSED**
**MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO COMPLAINT**

Defendant USHEALTH Advisors, LLC (erroneously named as "USHEALTH Advisors"), pursuant to Florida Rules of Civil Procedure 1.090(b), hereby requests an enlargement of time of thirty (30) days to respond to Plaintiff Delmarie Alicea's Class Action Complaint (the "Complaint") by no later than May 25, 2023. In support, Defendant states the following:

1. Plaintiff commenced this lawsuit on March 8, 2023.

2. The Summons and Complaint were delivered to the registered agent of a corporate affiliate of Defendant on April 5, 2023. Defendant's response to the Complaint is therefore currently calendared as due on April 25, 2023.

3. Undersigned counsel was just recently engaged to represent Defendant in this matter. Undersigned counsel and Defendant require additional time to investigate the allegations and the defenses and to prepare an appropriate response to the Complaint. Additional time is also required on account of counsel's pressing deadlines and obligations in other matter.

4. To ensure that counsel has sufficient time to review and analyze the allegations and formulate proper responses to the Complaint, Defendant therefore respectfully requests an enlargement of thirty days, up through and including May 25, 2023, to respond to the Complaint.

5. Undersigned counsel has conferred with counsel for Plaintiff, who advises that Plaintiff agrees to the requested extensions of time to respond to the Complaint..

6. This request is made in good faith and not for the purpose of delay, and will not prejudice any party or the Court.

WHEREFORE, Defendant USHEALTH Advisors, LLC hereby requests that this Court enter an order enlarging its time to respond to Plaintiff's Complaint by thirty days up to and including May 25, 2023.

DATED: April 24, 2023

GREENSPOON MARDER LLP

BY: *<u>/s/ Roy Taub</u>*

JEFFREY A. BACKMAN
Florida Bar No. 662501
ROY TAUB
Florida Bar No. 116263
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com
alyson.mercier@gmlaw.com
cheryl.cochran@gmlaw.com
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954.491.1120
Facsimile: 954.343.6958

*Attorneys for Defendant*
*USHEALTH Advisors, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 24, 2023, a copy of the foregoing was electronically filed with the Clerk of the Court on the Florida Courts E-Filing Portal, which will send notice of filing and a service copy to all counsel of record.

*/s/ Roy Taub*
ROY TAUB

GreenspoonMarder LLP

Roy Taub, Esq.
PNC Building
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Phone: 954.491.1120
Fax: 954.771.9264
Direct Phone: 954.527.6231
Direct Fax: 954.333.4231
Email: roy.taub@gmlaw.com

May 1, 2023

**Via E-File & E-Mail**

Hon. A. James Craner
Orange County Courthouse
425 N. Orange Avenue
Orlando, FL 32801

**Re: Alicea v. USHEALTH Advisors, Case No. 2023-CA-1967-O**

Dear Judge Craner:

The undersigned represents Defendant USHEALTH Advisors, LLC in the above-referenced action. Attached please find Defendant's Motion for Extension of Time to Respond to the Complaint. Also attached is a proposed Order, the form of which has been approved by opposing counsel. If the proposed Order meets with the Court's approval, I understand the conformed Order will be provided to all counsel of record.

Respectfully submitted,

GREENSPOON MARDER LLP

*Roy Taub*

Roy Taub, Esq.

cc: William "Billy" Peerce Howard, Esq. (via e-mail-w/attachments)
Amanda J. Allen, Esq. (via e-mail-w/attachments)

IN THE CIRCUIT COURT OF THE 9TH
JUDICIAL CIRCUIT, IN AND FOR
ORANGE COUNTY, FLORIDA

CASE NO. 2023-CA-001967-O

DELMARIE ALICEA ,

Plaintiff,

v.

USHEALTH ADVISORS a wholly-owned national sales and distribution subsidiary of USHEALTH GROUP, INC., a UNITED HEALTHCARE COMPANY (United Healthcare, Inc.),

Defendant.

_______________________________________/

**AGREED ORDER ON DEFENDANT USHEALTH ADVISORS, LLC'S UNOPPOSED MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO COMPLAINT**

THIS CAUSE having come before the Court upon Defendant USHEALTH Advisors, LLC's Unopposed Motion for Enlargement of Time to Respond to Complaint, and the Court being fully advised in the premises, it is hereby

ORDERED AND ADJUDGED THAT USHEALTH Advisors, LLC's time to respond to Plaintiff's Class Action Complaint is enlarged to May 25, 2023.

DONE AND ORDERED in Chambers at Orlando, Florida on this 2 day of May, 2023.

_______________________________
Hon. A. James Craner
Circuit Court Judge

Copies furnished
All Counsel of Record

Filing # 172473292 E-Filed 05/04/2023 03:58:21 PM

IN THE CIRCUIT COURT OF THE 9TH JUDICIAL CIRCUIT, IN AND FOR ORANGE COUNTY, FLORIDA

CASE NO. 2023-CA-001967-O

DELMARIE ALICEA ,

Plaintiff,

v.

USHEALTH ADVISORS a wholly-owned national sales and distribution subsidiary of USHEALTH GROUP, INC., a UNITED HEALTHCARE COMPANY (United Healthcare, Inc.),

Defendant.
_______________________________________/

**AGREED ORDER ON DEFENDANT USHEALTH ADVISORS, LLC'S UNOPPOSED MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO COMPLAINT**

THIS CAUSE having come before the Court upon Defendant USHEALTH Advisors, LLC's Unopposed Motion for Enlargement of Time to Respond to Complaint, and the Court being fully advised in the premises, it is hereby

ORDERED AND ADJUDGED THAT USHEALTH Advisors, LLC's time to respond to Plaintiff's Class Action Complaint is enlarged to May 25, 2023.

DONE AND ORDERED in Chambers at Orlando, Florida on this 4 day of May, 2023.

Hon. A. James Craner
Circuit Court Judge

Copies furnished
All Counsel of Record